# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| LISA M. KEITH,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | 2:18-cv-01110-JAD-VCF<br><br>**REPORT AND RECOMENDATION**<br><br>MOTION FOR REVERSAL [ECF NO. 15]; MOTION TO AFFIRM [ECF NO. 22] |

   This matter involves Plaintiff Lisa Keith's appeal from the Administrative Law Judge's ("ALJ") final decision denying her social security benefits. Before the Court are Keith's Motion for Reversal and/or Remand (ECF No. 15) and the Commissioner's Cross-Motion to Affirm and Response (ECF Nos. 22, 23). For the reasons stated below, the Court recommends granting Plaintiff's Motion to Remand and denying the Commissioner's Cross-Motion.

## STANDARD OF REVIEW

   The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. Const. amend. V. Social security claimants have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). When the Commissioner of Social Security renders a final decision denying a claimant's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision. *See* 42 U.S.C. § 405(g); 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The District Court's review is limited. *See Treichler v. Comm'r of SSA,* 775 F.3d 1090, 1093 (9th Cir. 2014) ("It is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.") The Court examines the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938) (defining "a mere scintilla" of evidence). If the evidence supports more than one interpretation, the Court must uphold the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Commissioner's decision will be upheld if it has any support in the record. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating the court may not reweigh evidence, try the case de novo, or overturn the Commissioner's decision if the evidence preponderates against it).

## DISSCUSSION

The Administrative Law Judge ("ALJ") followed the five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520. The ALJ concluded Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 18, 2012. (AR[1] at 18). The ALJ found Plaintiff had numerous severe impairments which had "more than a minimal effect on the claimant's ability to do basic physical or mental work activities." (*Id.* at 19). These were: disorders of the urinary tract, chronic liver disease, spine disorders, obesity, and affective disorders. (*Id.* at 18-19). The ALJ concluded Plaintiff's plantar fasciitis, hypothyroidism, and anemia did not rise to the level of severe because they were amenable to proper control and required no aggressive treatment, but considered

---

[1] The Administrative Record ("AR") is found at ECF Nos. 14-1 through 14-4.

them when assessing Plaintiff's residual functional capacity. (*Id.* at 19). The ALJ found Plaintiff's impairments did not meet or medically equal the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*). The ALJ concluded Plaintiff had the residual functional capacity to perform light work; lift 20 pounds occasionally and ten pounds frequently; stand six hours in an eight-hour day; sit six hours in an eight-hour work day; occasionally climb ladders, ropes, and scaffolds; stoop or crawl; and perform all other postural activities on a frequent basis. (*Id.* at 20). The ALJ concluded that Plaintiff is limited to unskilled work, but can to respond to changes in a routine work setting. (*Id.*). The ALJ found Plaintiff cannot perform any past relevant work, but can perform other jobs that exist in significant numbers in the national economy. (*Id.* at 25-26). The ALJ also found that Plaintiff meets the insured status requirements of sections 216(i) and 223 of the Social Security Act. (*Id.* at 18). Overall, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Social Security Act from September 18, 2012 through the date of the decision on February 23, 2017. (*Id.* at 27).

Plaintiff challenges the ALJ's conclusions on two grounds: 1) the ALJ improperly failed to give any weight to the medical opinions of Dr. Burkett and Dr. Foerster, and 2) the ALJ wrongly discounted Plaintiff's pain and symptom testimony. (ECF No. 15 at 10, 20). Specifically, Plaintiff argues the ALJ failed to consider the opinions of Dr. Burkett and Dr. Foerster. (*Id.*). Dr. Burkett found that Plaintiff is limited to a "less than sedentary," functional capacity. (AR at 2134-36). Dr. Foerster found that Plaintiff lacks the ability to interact with coworkers. (AR at 1578-1584). Plaintiff argues Dr. Burkett and Dr. Foerster are treating physicians and their opinions should have controlling weight. (ECF No. 15 at 10, 20). Plaintiff also argues the ALJ failed to provide a legitimate reason for rejecting Plaintiff's testimony as not believable, instead relying on "boilerplate" language and improperly citing a lack of corroboration by the medical evidence. (*Id.*).

The Commissioner argues the ALJ's decision is supported by substantial evidence. (ECF No. 22 at 1). The Commissioner asserts the ALJ did not give the opinions of Dr. Burkett or Dr. Forester

controlling weight because they are not treating physicians, and their one-time assessments were contradicted by the medical evidence. (*Id.* at 10-13). The Commissioner states the ALJ rejected Plaintiff's testimony because the medical record showed overall conservative treatment and because Plaintiff's testimony contradicted itself and the medical record. (*Id.* at 5-6). Overall, the Commissioner argues the ALJ gave specific and legally sufficient reasons for rejecting Plaintiff's testimony and the opinions of Dr. Burkett and Dr. Foerster. (*Id.* at 9-13).

The Court finds the ALJ applied the correct legal standards and made conclusions supported by substantial evidence when discounting the physicians' testimony. However, the ALJ failed to give clear and convincing reasons for rejecting the testimony of Plaintiff Keith, as discussed below.

## I. Discounting Physicians' Testimony

The ALJ gives more weight to opinions from treating physicians than examining physicians. "Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). A treating physician is one who provides an "ongoing treatment relationship," *i.e.*, more than just a one-time examination. 20 C.F.R. § 404.1527(a)(2). The Commissioner argues that neither Dr. Burkett nor Dr. Foerster are treating physicians. (ECF No. 22 at 10). This Court agrees, because Dr. Burkett based his conclusions on one review of the medical record, and Dr. Foerster only met with Plaintiff once. (AR at 1578-1584; 2134-36).

### A. Dr. Forester

The Commissioner must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When the examining physician's opinion is contradicted by the evidence, the ALJ need only give specific and legitimate reasons for rejecting it. *Id*.

The ALJ gave specific and legitimate reasons for why she did not fully agree with Dr. Foerster's opinion. (AR at 24-25). The ALJ gave significant weight to Dr. Foerster's opinion, but did not accept her conclusion that Plaintiff could not interact appropriately with supervisors, coworkers, or the general public because it was inconsistent with Plaintiff's testimony. (AR at 24-25). Specifically, Plaintiff testified she has good relationships with her roommates, her adult children, her friends, and her husband. (AR at 257, 264, 267). The ALJ also considered the global assessment of functioning ("GAF") of Plaintiff, but gave it limited evidentiary value because it reveals "only snapshots of…behavior and [mental] state." (AR at 25, 1875-1882). The ALJ showed how Dr. Foerster's opinion was contradicted by the record and listed specific reasons for giving more weight to objective details of the record, which more accurately describe Plaintiff's function-by-function capacity. (*Id*. at 25). Overall, the ALJ gave specific and legitimate reasons for rejecting some of Dr. Foerster's conclusions.

### B. Dr. Burkett

Opinions of non-treating and non-examining physicians constitute substantial evidence only "when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ need not accept the opinion of any physician if that opinion is brief, conclusory, or inadequately supported by clinical findings. *Id.*

The ALJ correctly noted that Dr. Burkett reviewed the medical record once to make his review, making him a non-treating, non-examining physician. (AR at 25, 2134-2136). The ALJ listed several areas where Dr. Burkett's opinion was not consistent with the medical record. (AR at 25). The ALJ discussed how Dr. Burkett's conclusion that Plaintiff could not stand for more than two hours a day was contradicted by Plaintiff's testimony of cleaning for hours at a time. (*Id*.). The ALJ noted how the State agency physician found Plaintiff's neurologic examinations normal and "intact." (AR at 23-25, 2078, 2083). The ALJ pointed out that "whether the claimant is disabled is an opinion on an issue reserved to the Commissioner," therefore Dr. Burkett's conclusion that Plaintiff is disabled is not entitled to controlling

weight. (AR at 25, citing 20 CFR 404.1527(d)(1) and 416.927(d)(1)). Overall, the ALJ stated specific and legitimate reasons for affording Dr. Burkett's review of the medical record little weight.

**II.     Rejecting Plaintiff's Pain and Symptom Testimony**

The ALJ must engage in a preliminary two-step analysis before discounting the claimant's testimony regarding her subjective symptoms. SSR 16–3p; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment, "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). If the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms by offering specific, clear and convincing reasons for doing so." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). To reject the claimant's testimony, the ALJ must point to specific facts in the record that demonstrate the individual's symptoms are less severe than she claims. *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009). General findings are not enough: the ALJ must identify which testimony is not credible and what evidence undermines it. *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's medically determinable impairments could be reasonably expected to cause the alleged symptoms. (AR at 22). However, the ALJ listed two reasons for disclaiming Plaintiff's allegations regarding "the intensity, persistence, and limiting effects of her symptoms:" 1) the ALJ found Plaintiff's treatment was conservative overall and 2) the ALJ found inconsistencies in Plaintiff's testimony. (*Id.* at 21-22).

### A. Conservative Treatment

The ALJ found Plaintiff's testimony showed overall conservative treatment. (*Id.* at 22). "Conservative treatment can suggest a lower level of both pain and functional limitation, justifying an adverse credibility determination." *Childers v. Berryhill*, 2019 U.S. Dist. LEXIS 57474, at *21 (D. Nev. Mar. 12, 2019). Although surgery is not conservative treatment, the ALJ discussed how physical examinations conducted both before and after the Plaintiff's surgery in June 2016 documented normal neurological findings. (*Id.* at 23, 262, 2077, 2082, 2092, 2095, 2098, 2100); *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010). The ALJ also pointed to Plaintiff's over-the-counter medications, physical therapy, and home exercise, which are all forms of conservative treatment. (AR 22, 850, 1139, 1159, 1266, 1309, 1539, 1599, 1822).

Plaintiff received other treatments. (AR at 255, 489, 952-953, 994, 1116, 1189, 1361, 2100, 2103, 2107, 2116, 2118, 2122). The medical record and testimony shows Plaintiff has received periodic epidural injections since December 2012. (AR at 255, 952, 994, 1116, 1189, 1361, 2103, 2118). The record also shows Plaintiff has been receiving prescriptions for Norco, a narcotic, since before her surgery. (AR at 489, 952-953, 2100, 2107, 2113, 2116, 2122). This Circuit regularly holds that epidural injections and narcotics not conservative treatments, especially in conjunction with surgery. *Lapeirre-Gutt*, 382 F. App'x at 664 (finding ALJ's reasons for determining conservative treatment unconvincing because Plaintiff used narcotics, took injections for back pain, and underwent surgery); *Childers,* 2019 U.S. Dist. LEXIS 57474, at *25 ("Many courts consider the use of narcotics and injections for pain management not conservative in nature"). The ALJ mentioned neither the epidural injections nor the narcotics in her findings. (AR at 20-25). Though the Court must uphold the Commissioner's interpretation of evidence, here the ALJ failed to interpret or even mention substantial evidence. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Because the ALJ failed to consider the epidural injections and the on-going prescription for narcotics, the Court finds the ALJ's conclusions unsupported by substantial evidence.

## B. Inconsistencies in Plaintiff's Pain and Symptom Testimony

The ALJ found that Plaintiff's testimony regarding her daily activities contradicted her pain and symptom testimony. (AR at 21). Courts are particularly cautious in using testimony about daily activities against a claimant's credibility:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Because daily activities and the demands of work are inherently different, an ALJ may only use daily activities to form the basis of an adverse credibility determination when the claimant's activities contradict other testimony, or when the activities meet the threshold for transferable work skills. *See id.*; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ must make specific findings about how Plaintiff's daily activities make her able to work. *See Burch,* 400 F.3d at 681.

The ALJ found Plaintiff's testimony of debilitating pain was contradicted by daily activities such as light household chores, preparing simple meals, helping her children with their homework, taking her children to the park, and watching television. (AR at 21, 22, 255-258, 263, 268). The ALJ found that caring for a special-needs child "can be demanding both physically and emotionally," and that Plaintiff managed this care "without much assistance." (AR at 22). However, Plaintiff also testified to taking three Norco a day and receiving epidural injections, which is consistent with Plaintiff's testimony of debilitating pain and the medical record. (AR at 255-258, 264, 268, 489, 952-953, 2100, 2107, 2113, 2116, 2122). Courts do not fault a claimant for attempting to live a normal life despite pain. *Garrision*, 759 F.3d at 1016; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("disability claimants should not be penalized

for attempting to lead normal lives in the face of their limitations"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ determined Plaintiff's alleged daily tasks and social interactions "replicate those necessary for obtaining and maintaining employment, particularly light work." (*Id.* at 22). This statement does not meet the requisite legal standard. The evidence does not show that Plaintiff spends a substantial part of her day engaged in these activities, and even if it did, the ALJ made no specific findings as to how activities like watching television and making simple meals translates to work-related activities. *See e.g., Fair* 885 F.2d at 603 ("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.") Furthermore, Plaintiff testified that she can only complete light household activities, that she can neither stand nor sit for long periods of time, and that she takes frequent naps. (AR at 254-256, 264). One key difference between the activities of work and daily life is the ability to periodically rest. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication") (quoting *Fair* 885 F.2d at 603); *Reddick,* 157 F.3d at 722 (finding claimant's testimony of pain consistent with her daily activities because they were "sporadic and punctuated with rest.")

The Court finds the ALJ did not make specific findings regarding how Plaintiff's daily activities contradicted her testimony, nor how they would translate to the pressures of a work environment. The ALJ did not provide clear and convincing reasons to deem Plaintiff's treatment conservative in light of Plaintiff's use or narcotics and epidural injections. The errors are not harmless because they make up the entirety of the ALJ's unfavorable credibility assessment. *See Childers v. Berryhill*, 2019 U.S. Dist. LEXIS 57474, at *28 (D. Nev. Mar. 12, 2019).

### III.     Remand

The Court finds the ALJ provided specific and legitimate reasons for rejecting Dr. Burkett's opinion and partially accepting Dr. Foerster's opinion. However, the Court finds the ALJ did not give clear and convincing reasons for discrediting Plaintiff's testimony. The Court recommends the case be remanded to the agency for further administrative proceedings. When the Court finds an ALJ erred in denying social security benefits, ordinarily the Court "must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 874 F.3d 1130 at *5 (9th Cir. 2017, amended Jan. 25, 2018) (citing *Treichler v. Comm'r of SSA.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

The "credit-as-true," rule permits a direct award of benefits on review in rare circumstances. *Id.* at *3. Under the three-part rule, the Court first considers whether the "ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at *6 (quoting *Garrison*, 759 F.3d at 1020). This step is met for the reasons set forth above. At the second step, the Court considers whether there are "outstanding issues that must be resolved before a disability determination can be made" and whether further administrative proceedings would be useful. *Treichler,* 775 F.3d at 1101. "In evaluating this issue, [the Court] consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103-1104. "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105. Because the ALJ's findings regarding the claimant's subjective testimony are inadequate, remand for further findings on credibility is appropriate. *See Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995). Therefore, the Court finds further administrative proceedings are necessary and recommends the case be remanded.

Having reviewed the Administrative Record as a whole, the Court finds that the ALJ's decision is not wholly supported by substantial evidence and recommends the case be remanded.

Accordingly, and for good cause shown,

IT IS HEREBY RECOMMENDED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 15) be GRANTED and the case REMANDED, and the Commissioner's Cross-Motion to Affirm (ECF No. 22) be DENIED.

DATED this 9th day of July, 2019.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE